## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGIA SENATOR NIKEMA WILLIAMS,
DEVIN BARRINGTON-WARD,
RICHARD BATHRICK,
SHANNON COFRIN GAGGERO,
RAYMOND "BEN" HARRIS,
MARY HOOKS,
PRISCILLA SMITH,
DESMOND TUCKER,
YOMARA VELEZ, and
APRIL ZACHARY

      Plaintiffs,

    v.

COLIN POWELL,
DARRIUS MAGEE,
JAMES WICKER,
JAMES WOBLE,
JAVEN ROBERSON,
JEFFREY ROGERS,
JEREMIAH SLAY,
JOSEPH GOBLE,
JUSTIN GOLDEN,
KEVIN HAWKINS,
KYLE MCCLENDON, and
MATTHEW RAY,

      Defendants, sued in their individual
      capacity and in their official capacity
      as Department of Public Safety
      officers.

CIVIL ACTION FILE NO.

_____

**JURY TRIAL DEMANDED**

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs file this action for damages and injunctive relief, stemming from their unlawful arrest without arguable probable cause and in retaliation for their protected speech activity. Plaintiffs seek damages for being deprived of their liberty and silenced because of their political speech. Plaintiffs seek injunctive relief to bar further enforcement of O.C.G.A. § 16-11-34.1, which is overbroad and unconstitutional on its face.

## INTRODUCTION

1.      Plaintiffs were arrested by a contingent of officers from the Department of Public Safety at the Georgia State Capitol on November 13, 2018.

2.      Plaintiffs were arrested as they peacefully protested against voter suppression and disenfranchisement in the recent election.

3.      While peacefully congregated in the public rotunda inside the Capitol, some Plaintiffs and others briefly chanted, "Count every vote!" Then, as Plaintiff Mary Hooks was speaking, Defendants began to arrest people who had chanted as well as people who had simply associated with people who had chanted.

4.     Each Plaintiff was arrested by Defendants and charged with a single count of "preventing or disrupting General Assembly sessions or other meetings of members," in violation of O.C.G.A. § 16-11-34.1.

5.     That statute purports to make it unlawful for "any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof."

6.     O.C.G.A. § 16-11-34.1 is facially unconstitutional for the same reasons that the virtually identical statute regarding disruption of other government meetings was declared unconstitutional in *State v. Fielden*, 629 S.E.2d 252 (Ga. 2006). Like O.C.G.A. § 16-11-34, the challenged statute violates the First Amendment because it does not require proof of intent to disrupt, does not require proof that acts would substantially impair any session, and does not require proof of any actual disruption. Thus, the statute proscribes significant protected activity in violation of the First Amendment.

## JURISDICTION AND VENUE

7.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States

Constitution. This Court has jurisdiction of federal claims under 28 U.S.C. §§ 1331 and 1343.

8.      Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims arose in this district and division.

## PARTIES

**A. Plaintiffs**

9.      Plaintiff Nikema Williams is a Senator in the Georgia Legislature and a resident of Fulton County, Georgia.

10.      Plaintiff Devin Barrington-Ward is a resident of Georgia.

11.      Plaintiff Richard Bathrick is a resident of Georgia.

12.      Plaintiff Shannon Cofrin Gaggero is a resident of Georgia.

13.      Plaintiff Raymond "Ben" Harris is a resident of Georgia.

14.      Plaintiff Mary Hooks is a resident of Georgia.

15.      Plaintiff Priscilla Smith is a resident of Georgia.

16.      Plaintiff Desmond Tucker is a resident of Georgia.

17.      Plaintiff Yomara Velez is a resident of Georgia.

18.      Plaintiff April Zachary is a resident of Georgia.

**B. Defendants**

19.     At the time of the events giving rise to this Complaint, Defendant Colin Powell was a law enforcement officer employed as a Sergeant in the Department of Public Safety. Powell personally arrested one or more Plaintiffs. Powell also authored all of the citations and warrants at issue in this matter. At all times relevant to the complaint, Powell acted under the color of law.

20.     At the time of the events giving rise to this Complaint, Defendant Darrius Magee was a law enforcement officer employed as a Cadet in the Department of Public Safety. Magee personally arrested one or more Plaintiffs. At all times relevant to the complaint, Magee acted under the color of law.

21.     At the time of the events giving rise to this Complaint, Defendant James Wicker was a law enforcement officer employed as a Lieutenant in the Department of Public Safety.  Wicker personally arrested one or more Plaintiffs. At all times relevant to the complaint, Wicker acted under the color of law.

22.     At the time of the events giving rise to this Complaint, Defendant James Woble was a law enforcement officer employed as a Corporal in the Department of Public Safety.  Woble personally arrested one or more Plaintiffs. At all times relevant to the complaint, Woble acted under the color of law.

23.     At the time of the events giving rise to this Complaint, Defendant Javen Roberson was a law enforcement officer employed as an Officer in the Department of Public Safety.  Roberson personally arrested one or more Plaintiffs. At all times relevant to the complaint, Roberson acted under the color of law.

24.     At the time of the events giving rise to this Complaint, Defendant Jeffrey Rogers was a law enforcement officer employed as a Cadet in the Department of Public Safety.  Rogers personally arrested one or more Plaintiffs. At all times relevant to the complaint, Rogers acted under the color of law.

25.     At the time of the events giving rise to this Complaint, Defendant Jeremiah Slay was a law enforcement officer employed as a Sergeant in the Department of Public Safety. Slay personally arrested one or more Plaintiffs.  At all times relevant to the complaint, Slay acted under the color of law.

26.     At the time of the events giving rise to this Complaint, Defendant Joseph Goble was a law enforcement officer employed as a Trooper in the Department of Public Safety.  Goble personally arrested one or more Plaintiffs.  At all times relevant to the complaint, Goble acted under the color of law.

27.     At the time of the events giving rise to this Complaint, Defendant Justin Golden was a law enforcement officer employed as a Sergeant in the

Department of Public Safety.  Golden personally arrested one or more Plaintiffs. At all times relevant to the complaint, Golden acted under the color of law.

28.    At the time of the events giving rise to this Complaint, Defendant Kevin Hawkins was a law enforcement officer employed as a Sergeant in the Department of Public Safety.  Hawkins personally arrested one or more Plaintiffs. At all times relevant to the complaint, Hawkins acted under the color of law.

29.    At the time of the events giving rise to this Complaint, Defendant Kyle McClendon was a law enforcement officer employed as a Cadet in the Department of Public Safety. McClendon personally arrested one or more Plaintiffs. At all times relevant to the complaint, McClendon acted under the color of law.

30.    At the time of the events giving rise to this Complaint, Defendant Matthew Ray was a law enforcement officer employed as a Trooper in the Department of Public Safety. Ray personally arrested one or more Plaintiffs. At all times relevant to the complaint, Ray acted under the color of law.

## STATEMENT OF FACTS

31.    The November 6, 2018 election for Governor of Georgia was hotly contested, and, in the aftermath, it was not apparent who had won or whether a run-off election would be required.

32.     Then-candidate Brian Kemp was also the acting Secretary of State during the election, which led to widespread allegations of a conflict of interest, especially as Kemp purged over half a million people from the voter rolls.[1]

33.     Following the November 6, 2018 election, there was a significant risk that many votes would not be counted for unlawful reasons.

34.     As a result, this Court issued orders requiring that Kemp, in his capacity as Secretary of State, preserve and account for provisional ballots and refrain from certifying the election results prior to such preservation and accounting. *See Common Cause Georgia v. Kemp*, 1:18-cv-5102-AT, Doc. No. 62 (Nov. 12, 2018).

35.     This Court issued a separate order finding that election officials had violated the Voting Rights Act by refusing to count absentee ballots for unlawful reasons. *See Martin v. Crittenden*, 1:18-cv-4776-LMM, Doc. No. 55 (Nov. 13, 2018).

---

[1] On September 1, 2020, the American Civil Liberties Union of Georgia published a detailed study that found that 198,351 voters that were purged from the voting rolls should not have been purged, and many of these voters were "younger citizens and citizens of color." *See* Greg Palast, et al., *Georgia Voter Roll Purger Errors* (Sept. 1, 2020), *available at* https://www.acluga.org/sites/default/files/georgia_voter_roll_purge_errors_report.pdf

36.     Against this backdrop, On November 13, Plaintiffs lawfully and peacefully assembled in the rotunda of the Georgia Capitol to demand that every vote be counted.

37.     The rotunda of the Georgia State Capitol is a public forum where the public is permitted to congregate and speak.  *See Chabad-Lubavitch of Georgia v. Miller*, 5 F.3d. 1383, 1388 (11th Cir. 1993) (en banc).

38.     The rotunda of the Georgia State Capitol has historically been used as a location for protests, press conferences and other free speech activity, and is the central location for free speech activity within the Georgia State Capitol.

39.     For example, earlier on the day of November 13, 2018, elected officials had spoken next to the rotunda about the problems with the 2018 gubernatorial election.

<u>The Protest to Count All the Votes and Arrests</u>

40.     Later in the day on November 13, 2018, Plaintiffs gathered in the Rotunda area to protest to ensure all votes were counted.

41.     Plaintiff Mary Hooks spoke to the assembled persons about the election and the importance of speaking up to ensure that every vote was counted.

42.     Some of the Plaintiffs chanted "Count every vote!" while other Plaintiffs stood by and did not chant.

43.    Plaintiff Mary Hooks led the assembled persons in reciting a pledge to organize and advocate for voting and political engagement.

44.    Some of the Plaintiffs recited the pledge while other Plaintiffs stood by and did not recite the pledge.

45.    Then, as Plaintiff Mary Hooks affirmed to the assembled persons that "elections are important," she was approached from behind by one of the Defendants and arrested.

46.    Plaintiff Mary Hooks was the first person to be arrested.

47.    Plaintiff Mary Hooks was targeted for arrest because she appeared to be leading the assembled persons.

48.    Defendants then proceeded to arrest each of the Plaintiffs.

49.    As Defendants were beginning to arrest the Plaintiffs, several persons were knocked to the ground by Defendants.

50.    Each Defendant personally seized and/or arrested one or more of the Plaintiffs.[2]

---

[2] Without discovery, Plaintiffs may be unable to identify which Defendant officer made which arrests. However, Plaintiffs have pleaded that each Defendant personally seized one or more of the Plaintiffs for purportedly violating O.C.G.A. § 16-11-34.1, consistent with Defendants' documentation regarding these arrests. At this time, Defendants are sued for their personal affirmative acts and not for their involvement as supervisors of or bystanders to unconstitutional seizures.

51.    Defendants' arrested Plaintiffs who had not chanted, as well as Plaintiffs who had chanted.

52.    None of the Plaintiffs used any noise making or amplifying devices.

53.    None of the Plaintiffs disrupted or impaired any session of the Georgia Legislature.

54.    The Georgia House of Representatives was in session at the time of the arrests, but their work was not disrupted in any way, either before or during the arrests.

55.    Any reasonable officer would have known that Plaintiffs' speech activity could not have disrupted the Georgia House of Representatives based on the layout of the Capitol, the fact that similar speech activity was routinely permitted because it did not interfere with any session, and the fact that any inquiry by the Defendants of the Chambers at the Georgia State Capitol would have revealed that all active sessions were in fact proceeding without incident.

56.    Any reasonable officer would have known that none of the Plaintiffs intended to disrupt or impair any session of the Georgia Legislature because Plaintiffs were simply speaking while in the rotunda area open to the public; the

---

Plaintiffs intend to Amend their Complaint upon learning facts as to these issues in discovery, which Plaintiffs could not have known prior to discovery.

Rotunda was a frequent area for similar speech activities and any session could have (and did) continue uninterrupted by any of Plaintiffs' speech activity.

57.    The Plaintiffs' free speech activity was comparable in volume, attendance and duration to numerous other free speech activities at the Georgia State Capitol Rotunda where no arrests occurred.

58.    Plaintiffs were threatened with arrest.

59.    Each Plaintiff had their hands restrained behind their back with zip ties.

60.    Plaintiff Barrington-Ward was wearing a backpack, and Defendants restrained Plaintiff Barrington-Ward's hands behind his back and around his backpack for several hours, causing pain, injury and discomfort; Plaintiff Barrington-Ward has had to undergo dozens of chiropractic treatments as a result and still experiences pain and discomfort.

61.    After Defendants restrained Plaintiffs' hands behind their backs, Defendants took Plaintiffs to one or more vans for transport.

62.    Defendants left Plaintiffs in a van on a cold day for approximately 1.5 to 2 hours.

63.     Plaintiffs were then taken into the Fulton County Jail and strip searched, held for approximately 10 hours without food or water, and had to endure long waits to use the bathroom.

64.     Each Plaintiff is a civically and politically active person, and have protested and engaged in free speech activity before.

65.     Several Plaintiffs, including Priscilla Smith, frequently went to the Georgia State Capitol itself to protest and engage in free speech activity and they would like to do so again if they are not subject to threatened arrest under O.C.G.A. § 16-11-34.1.

66.     Each Plaintiff would return to the rotunda area to engage in similar speech activity, specifically to demand that every vote be counted ahead of the November 2020 elections, but Plaintiffs fear that if they repeat similar speech activity, they will be arrested again.

67.     If and when this Court determines that O.C.G.A. § 16-11-34.1 is facially unconstitutional, Plaintiffs will immediately resume their speech activities at the Capitol.

68.     Each Plaintiff was arrested and charged with a single count of having violated O.C.G.A. § 16-11-34.1.

69.     Plaintiff Senator Nikema Williams was also charged with having violated O.C.G.A. § 16-10-24 for resisting arrest.

70.     Plaintiff Senator Nikema Williams's arrest did not resist arrest in any way.

71.     Specifically, Plaintiff Senator Nikema Williams was immune from detention at the time of her arrest pursuant to Article III, Section IV, Paragraph IX of the Georgia Constitution, which provides that "members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace."

72.     Immediately prior to her detention, Plaintiff Senator Nikema Williams was wearing her name badge identifying her as a Georgia Senator.

73.     When Defendants began their unlawful detentions, Defendants jostling of people near Plaintiff Senator Nikema Williams knocked her official nametag off Plaintiff Senator Nikema Williams.

74.     While Plaintiff Senator Nikema Williams was being detained and while Defendants were taking Plaintiff Senator Nikema Williams out of the Capitol, multiple members of the public, the press, and other elected officials

14

alerted Defendants that Plaintiff Senator Nikema Williams was an elected member of the Georgia Senate.

75.     Each Plaintiff was issued a Uniform Traffic Citation, Summons and Accusation while in Defendants' custody.

76.     The Uniform Traffic Citation, Summons and Accusation issued to each Plaintiff initiated a criminal prosecution against each Plaintiff.

77.     Defendant Colin Powell authored each Uniform Traffic Citation, Summons and Accusation.

78.     Defendant Colin Powell also swore out arrest warrants for each Plaintiff while they were in Defendants' custody.

79.     All charges against all Plaintiffs were dismissed on June 6, 2019.

80.     The dismissal of the charges against Plaintiffs was a reflection of Plaintiffs' First Amendment right to protest, their innocence of the offenses charged, and the fact that O.C.G.A. § 16-11-34.1 is facially unconstitutional.

81.     No dismissal was done by way of compromise or plea negotiation.

## CLAIMS FOR RELIEF

### Count One: Unlawful Seizure
### (by all Plaintiffs against all Defendants)

82.     There was no legal justification to arrest or to detain any Plaintiff at any juncture.  Even arguable reasonable suspicion was lacking to believe that any Plaintiff had committed any offense.

83.     Any reasonable law enforcement officer would have known that Plaintiffs took no action that would act to "prevent or disrupt" any session of the Georgia Legislature.

84.     Any reasonable law enforcement officer would also have known that O.C.G.A. § 16-11-34.1 was facially unconstitutional because the nearly identical O.C.G.A. § 16-11-34 had been unambiguously declared facially unconstitutional by the Georgia Supreme Court.

85.     For constitutional purposes, there is no material difference between O.C.G.A. § 16-11-34.1 and O.C.G.A. § 16-11-34.

86.     Plaintiffs were arrested and prosecuted without arguable probable cause.

87.     The warrants issued for Plaintiffs were facially void in that there were insufficient allegations of criminality to make out arguable probable cause.

Specifically, there was no allegation that any session of the Georgia Legislature had been or was being disrupted.

88.    The warrants issued for Plaintiffs arrests contained material omissions made recklessly or knowingly, in that, for example, the warrants did not include exculpatory facts showing that any session of the Georgia Legislature had been or was being disrupted by Plaintiffs' actions.

89.    As a result of their unlawful seizures, Plaintiffs suffered deprivations of liberty, lost the ability to exercise First Amendment rights, and experienced pain and suffering, humiliation, and fear.

90.    Defendants acted with malice in that they arrested Plaintiffs knowing that they lacked probable cause, knowing that O.C.G.A. § 16-11-34.1 was unconstitutional, and knowing that no session of the Georgia Legislature had been or was being interrupted by Plaintiffs' actions.

91.    Defendants also acted with malice in that they arrested Plaintiffs for the purpose of silencing their lawful speech activity.

92.    Plaintiffs were detained after the initiation of legal process in the form of the Uniform Traffic Citations, Summons and Accusations and the warrants.

93.     All criminal proceedings unambiguously terminated in Plaintiffs'

favor because all charges were dismissed.

## Count Two: Free Speech and Petition
### (by all Plaintiffs against all Defendants)

94.     By arresting Plaintiffs for engaging in legal and constitutionally

protected expression under penalty of arrest and criminal prosecution,

Defendants have deprived Plaintiffs of their right to free speech as protected by

the First and Fourteenth Amendments.

95.     Plaintiffs were denied their right to petition government, as

guaranteed by the Petition Clause of the First Amendment, as a result of their

arrests and prosecutions.

96.     Plaintiffs seek declaratory and injunctive relief barring enforcement

of O.C.G.A. § 16-11-34.1 as unconstitutional under the First and Fourteenth

Amendments and Georgia Constitution Article I, Section I, Paragraphs I, II, V,

VII, IX, and XIII.

97.     Plaintiffs also seek monetary damages for the infringement upon

their protected speech and the resulting silencing and chilling of their expression.

**Count Three: Unlawful Seizure due to Legislator Immunity**
**(by Plaintiff Senator Nikema Williams against all Defendants)**

98.     There was no legal justification to arrest or to detain Plaintiff Senator Nikema Williams at any juncture, especially during a specially called session of the Georgia General Assembly.

99.     Plaintiff Senator Nikema Williams was immune from detention at the time of her arrest pursuant to Article III, Section IV, Paragraph IX of the Georgia Constitution, which provides that "members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace."

100.    The purpose of Article III, Section IV, Paragraph IX of the Georgia Constitution is to ensure that elected members of the General Assembly could conduct business during a session of the General Assembly, including consulting with constituents and conferring with other elected members of the Georgia General Assembly about urgent legislation that will affect every Georgian, whether or not actual voting was taking place.

101.   Plaintiff Senator Nikema Williams was arrested and prosecuted without arguable probable cause, especially in light of Plaintiff Senator Nikema Williams's status as a State Senator.

102.   The warrant issued for Plaintiff Senator Nikema Williams was facially void in that there were insufficient allegations of criminality to make out arguable probable cause, especially in light of Plaintiff Senator Nikema Williams's status as a State Senator, and there was also no allegation that any session of the Georgia Legislature had been or was being disrupted.

103.   The warrant issued for Plaintiff Senator Nikema Williams's arrest contained material omissions made recklessly or knowingly, in that, for example, the warrants did not include exculpatory facts showing that no session of the Georgia Legislature had been or was being disrupted by Plaintiff's actions and that Plaintiff Senator Nikema Williams was a Georgia Senator during a specially called session of the Georgia General Assembly.

104.   As a result of her unlawful seizure, Plaintiff Senator Nikema Williams suffered deprivations of liberty, lost the ability to exercise First Amendment rights, lost the ability to conduct legislative business for almost a full day of a specially called legislative session; and, she has experienced pain and suffering, humiliation, and fear.

105.   Defendants acted with malice in that they arrested Plaintiff Senator Nikema Williams knowing that they lacked probable cause, knowing that O.C.G.A. § 16-11-34.1 was unconstitutional, knowing that no session of the Georgia Legislature had been or was being interrupted by Plaintiffs' actions, and knowing that Plaintiff Senator Nikema Williams was a sitting Georgia Senator.

106.   Defendants also acted with malice in that they arrested Plaintiff Senator Nikema Williams for the purpose of silencing her lawful speech activity and impeding her legislative duties.

107.   Plaintiff Senator Nikema Williams was detained after the initiation of legal process in the form of the Uniform Traffic Citations, Summons and Accusations and the warrants.

108.   All criminal proceedings unambiguously terminated in Plaintiff Senator Nikema Williams's favor because all charges were dismissed.

### **PRAYER FOR RELIEF**

WHEREFORE, on the basis of the foregoing, Plaintiffs respectfully pray that this Court:

(A) Assume jurisdiction over this action;

(B) Award nominal, compensatory, punitive and other damages against Defendants in an amount determined by a jury;

(C) Award declaratory and injunctive relief as set out herein and in

Plaintiffs' Motion for Injunctive Relief;

(D) Award reasonable attorneys' fees, expenses, and costs of litigation

pursuant to 42 U.S.C. § 1988 and other applicable state and federal laws;

(F) Award such other and further relief as this Court deems just and

proper.

A JURY TRIAL IS REQUESTED.

Respectfully submitted, this 29th day of September, 2020.


Counsel for Plaintiffs Williams and Barrington-Ward:

> _/s/David N. Dreyer_
> David N. Dreyer
> Georgia Bar No. 141322
> _/s/Michael T. Sterling_
> Michael T. Sterling
> Georgia Bar No. 745667
> DREYER STERLING LLC
> 437 Memorial Drive, Suite A2
> Atlanta, Georgia 30312
> (404) 234-4447
> david@dreyersterling.com
> michael@dreyersterling.com

Counsel for Plaintiffs Bathrick, Gaggero, Harris, Hooks, Smith, Tucker, Velez,

and Zachary:

/s/ Gerald Weber
Gerald Weber
Georgia Bar No. 744878
LAW OFFICES OF GERRY WEBER, LLC
Post Office Box 5391
Atlanta, GA 31107
404-522-0507
wgerryweber@gmail.com

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002
MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
404-812-4751
zack@mitchellshapiro.com

/s/ Ebony Brown
Ebony Brown
Georgia Bar No. 412565
SOUTHERN CENTER FOR HUMAN
RIGHTS
60 Walton Street, N.W.
Atlanta, GA 30303
Telephone: (404) 688-1202
Facsimile: (404) 688-9440
ebrown@schr.org

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

GEORGIA SENATOR NIKEMA WILLIAMS,
et al.,

       Plaintiffs,

    v.

COLIN POWELL, et al.,

       Defendants.

CIVIL ACTION FILE NO.

_____

## **VERIFICATION**

I verify under penalty of perjury that the foregoing is true and correct and

state that I am a plaintiff in the within and foregoing civil action and I verify that

the facts contained in the complaint are true and correct to the best of my

knowledge, information, and belief of counsel.

SO VERIFIED this 14th day of September, 2020.

Devin Barrington-Ward

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

GEORGIA SENATOR NIKEMA WILLIAMS,
DEVIN BARRINGTON-WARD,
RICHARD BATHRICK,
SHANNON COFRIN GAGGERO,
RAYMOND "BEN" HARRIS,
MARY HOOKS,
PRISCILLA SMITH,
DESMOND TUCKER,
YOMARA VELEZ, and
APRIL ZACHARY

       Plaintiffs,

    v.

COLIN POWELL,
DARRIUS MAGEE,
JAMES WICKER,
JAMES WOBLE,
JAVEN ROBERSON,
JEFFREY ROGERS,
JEREMIAH SLAY,
JOSEPH GOBLE,
JUSTIN GOLDEN,
KEVIN HAWKINS,
KYLE MCCLENDON, and
MATTHEW RAY,

    Defendants, sued in their individual
    capacity and in their official capacity
    as Department of Public Safety
    officers.

CIVIL ACTION FILE NO.

_____

**JURY TRIAL DEMANDED**

## VERIFICATION DECLARATION

As Plaintiff in this case, Priscilla Smith, on behalf of Plaintiffs above-captioned, I hereby declare under penalty of perjury that the within and

foregoing Complaint is true and correct to the best of my knowledge,

information, and belief, and is based upon the undersigned's personal

knowledge.  Declarant also states that the attached exhibits are true and

correct.

FURTHER DECLARANT SAITH NOT.

Priscilla Smith