# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | | |
|---|---|---|
| GEORGIA SENATOR NIKEMA WILLIAMS, et al., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | CIVIL ACTION NO. 1:20-cv-04012-MHC |
| COLIN POWELL, et al., | ) ) ) | |
| Defendants. | ) ) | |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Defendants Colin Powell, Darrius Magee, James Wicker, James Womble, Jeffrey Rogers, Jeremiah Slayton, Joseph Goble, Justin Golden, Kevin Hawkins, and Kyle McClendon ("Defendants"), through counsel, file this brief in support of their motion to dismiss, showing the Court as follows:

## PLAINTIFFS' ALLEGATIONS

Plaintiffs filed their lawsuit on September 29, 2020. (Doc. 1). Their claims arise out of Plaintiffs' arrests approximately two years ago during a protest at the Georgia Capitol Building. They challenge both the constitutionality of the arrests and the facial validity of the statute pursuant to which they were arrested – O.C.G.A. § 16-11-34.1.

The complaint alleges, in particular, that on November 13, 2018, Plaintiffs gathered in the Rotunda of the Capitol Building, an area of the building open to the public, to engage in a protest regarding the November 6 gubernatorial election. (Doc. 1, ¶¶ 36, 38, 40). The Georgia House of Representatives was in special session at the time

of the protest. (*Id.*, ¶ 54). Plaintiffs aver that Mary Hooks spoke to the crowd and led them in reciting a pledge, and some of the protesters, including some plaintiffs, chanted. (*Id.*, ¶¶ 41-44). They contend that each of the Plaintiffs was then arrested by one of the Defendants, all of whom were officers with the Georgia Department of Public Safety at the time, for violation of O.C.G.A. § 16-11-34.1.[1] (*Id.*, ¶¶ 53-57). Plaintiffs allege they were arrested even though they were "simply speaking" and did not disrupt, impair or interrupt the ongoing legislative session, and they contend their protest activity was "comparable in volume, attendance and duration to numerous other[s]" in the Rotunda which did not result in arrests. (*Id.*).

Plaintiff Nikema Williams, a Georgia state senator, was also charged with resisting arrest, a violation of O.C.G.A. § 16-10-24, even though, according to Plaintiffs, she "did not resist arrest in any way." (*Id.*, ¶¶ 69, 70). Plaintiffs contend further that Williams had been wearing a badge identifying her as a state senator at some point during the protest, but it was "knocked off" prior to her detention due to the "jostling of people" near her. (*Id.*, ¶¶ 72-73). They aver that "others alerted Defendants" that Williams was a member of the Georgia Senate while she was being detained. (*Id.*, ¶ 74).

Plaintiffs do not identify which Defendants arrested which Plaintiffs but contend that each Defendant placed at least one Plaintiff under arrest. (*Id.*, ¶¶ 19-30). They claim

---

[1] O.C.G.A. § 16-11-34.1(a) provides: "It shall be unlawful for any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof."

they were detained in a van for approximately one-and-a-half to two hours following their arrest and were subsequently held at Fulton County Jail for approximately ten hours, where they did not receive food, water, or timely bathroom access. (*Id.*, ¶¶ 62-66). Plaintiff Barrington-Ward alleges he experienced pain and discomfort as a result of his hands being restrained behind his back while he wore a backpack. (*Id.*, ¶ 60). Prior to their release, each Plaintiff was issued a Uniform Traffic Citation, Summons and Accusation "authored" by defendant Powell. (*Id.*, ¶¶ 75, 77). Plaintiffs aver that defendant Powell "also swore out arrest warrants for each Plaintiff while they were in Defendants' custody." (*Id.*, ¶ 78.) The charges against Plaintiffs were dismissed on June 6, 2019. (*Id.*, ¶ 79).

The complaint "aris[es] under 42 U.S.C. § 1983" and asserts three claims for relief. Count One is described as a claim for "unlawful seizure" by all Plaintiffs against all Defendants and alleges that Plaintiffs were "arrested and prosecuted without arguable probable cause." Count Two asserts that Plaintiffs' arrests violated their First Amendment rights to free speech and petition. It also raises a facial challenge to O.C.G.A. § 16-11-34.1 under the First and Fourteenth Amendments to the United States Constitution and Article I, Section I, Paragraphs I, II, V, VII, IX, and XIII of the Georgia Constitution. Finally, Count Three is described as a claim for "unlawful seizure due to legislator immunity" and is brought only on behalf of plaintiff Williams. Plaintiffs seek relief in the form of nominal, compensatory, and punitive damages, attorneys' fees, and costs. (*Id.*, pp. 21-22). They also seek, in connection with their facial challenge, a

declaration that O.C.G.A. § 16-11-34.1 is unconstitutional and an order enjoining its enforcement of § 16-11-34.1. (*Id.*).

## ARGUMENT

I.   **Plaintiffs fail to state a § 1983 claim for malicious prosecution in Count One.**

Plaintiffs describe Count One of the complaint as a claim for "unlawful seizure." There are two distinct Fourth Amendment claims cognizable under 42 U.S.C. § 1983 which may arise from an unlawful seizure – false arrest or imprisonment and malicious prosecution. The former concerns seizures made in the absence of a warrant or other legal process, whereas the latter concerns seizures made pursuant to an arrest warrant or other legal process. *See, e.g., Wallace v. Kato*, 549 U.S. 384, 389-390 (2007) (false imprisonment [or arrest] involves detention "without legal process," whereas "the 'entirely distinct' tort of malicious prosecution … remedies detention accompanied … by wrongful institution of legal process."). It is not clear from the complaint whether Plaintiffs are asserting a claim for false arrest, malicious prosecution, or both. Any claim for malicious prosecution against the Defendants, however, fails and must be dismissed.[2]

To state a federal malicious prosecution claim under § 1983, a plaintiff must allege (1) the elements of the common law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *See, e.g., Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (citing *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003)). The elements of the common law tort of malicious

---

[2] To the extent Count One asserts a claim for false arrest, Defendants do not seek dismissal of such claim at this stage of the proceedings.

prosecution are: (1) a criminal prosecution instituted or continued by the defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff's favor; and (4) caused damage to the plaintiff. *See, e.g., Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998); *Wood,* 323 F.3d at 882.

Here, the complaint clearly alleges a seizure – Plaintiffs contend they were arrested by Defendants on November 13, 2018. The complaint does not, however, contain factual allegations plausibly showing that the seizures were pursuant to legal process – i.e., that they occurred in connection with a criminal prosecution instituted or continued by the Defendants. On the contrary, the complaint makes clear that arrests at issue here were made during or immediately after the alleged violations and in the absence of warrants. (*See* Doc. 1, ¶¶ 44-48). "In the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) (holding that the plaintiff's warrantless arrest could not serve as the predicate deprivation of liberty in a malicious prosecution claim because it occurred prior to legal process). *See also Love v. Oliver*, 450 F. Supp. 2d 1336, 1340 (N.D. Ga. 2006) (same). Here, the complaint contains no allegation of an arraignment or indictment, much less that any Plaintiff was detained pursuant to such legal process.

To be sure, the complaint alleges that each Plaintiff was issued a "Uniform Traffic Citation, Summons, and Accusation" prior to their release from custody and that this "initiated a criminal prosecution against each Plaintiff." (Doc. 1, ¶¶ 75-77). But this is a classic example of a "legal conclusion[] cast in the form of [a] factual allegation[],"

5

which is not entitled to a presumption of truth. *Long v. Fulton County. Sch. Dist*., 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011). *See Hartman v. Thompson*, 931 F.3d 471, 485 (6th Cir. 2019) (assertion that plaintiffs' prosecution was "initiated by the citations and arrests issued by the defendants against the plaintiffs" was a conclusory allegation insufficient to plausibly show that the defendants instituted or continued a criminal prosecution). Moreover, even assuming the citations constituted legal process, the complaint does not plausibly allege that the Plaintiffs were arrested or confined pursuant to them. Rather, their detention, as the complaint makes clear, was pursuant to a warrantless arrest. *See Kingsland*, 382 F.3d at 1235 (plaintiff who was arrested without a warrant, transported to jail, charged with DUI, and was arraigned on the charges after bonding out failed to state a claim for malicious prosecution, because her detention occurred prior to legal process); *Romine v. Athens Clarke Cty.*, 774 F. App'x 620, 621 (11th Cir. 2019) (plaintiff failed to state malicious prosecution claim where complaint revealed that he was arrested without a warrant and was not subjected to seizure pursuant to a legal process). Finally, with the exception of defendant Powell, who is alleged to have "authored" the citations, the complaint fails to allege any involvement by the Defendants in their issuance. *See Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994) (even those involved in an arrest are not liable under Section 1983 for malicious prosecution unless they are separately and specifically also involved in the prosecution itself). The complaint's vague reference to citations does not provide a basis for a malicious prosecution claim against the Defendants.

6

The same is true of the complaint's equally vague references to "arrest warrants." It is true that the *issuance* of a warrant – even an invalid one – constitutes legal process. *See Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014). But the complaint is devoid of any allegation that Plaintiffs were seized by the Defendants pursuant to warrants. Rather, the complaint alleges only that defendant Powell[3] "swore out warrants for each Plaintiff" (Doc. 1, ¶ 78) – presumably a contention that he signed probable cause affidavits in an effort to obtain arrest warrants[4] – and that, at some unidentified time, "warrants issued for Plaintiffs" which contained "material omissions." There are no allegations that sworn statements of defendant Powell, or any Defendant, were presented to a judicial officer or magistrate, much less that Plaintiffs were "seized" pursuant to a warrant procured by such statements. In short, the complaint's references to "warrants" do not plausibly show that any Defendant, including defendant Powell, caused warrants to issue against Plaintiffs *and* that Plaintiffs were detained pursuant to such warrants. *See Love*, 450 F. Supp. 2d at 1342 (where there was no evidence that probable cause affidavits signed by defendant officer were ever presented to or signed by prosecutor or judicial officer, the affidavits did not establish initiation of legal process for purposes of

---

[3] The complaint alleges no involvement by any other Defendant with the purported warrants.

[4] Georgia law provides that an arrest warrant may be issued by "[a]ny judge of a superior, city, state, or magistrate court or any municipal officer clothed by law with the powers of a magistrate … based on probable cause either on the judge's or officer's own knowledge or on the information of others given to the judge or officer under oath." O.C.G.A. § 17-4-40.

malicious prosecution claim). The "warrant" allegations cannot provide the basis of a malicious prosecution claim.

The seizures at issue in this lawsuit are the warrantless arrests of the Plaintiffs which occurred on September 13, 2018. The complaint's allegations do not plausibly show that such seizures occurred after an arraignment, an indictment, the issuance of a warrant, or any other legal process. Accordingly, any Fourth Amendment malicious prosecution claim Plaintiffs seek to assert in Count 1 fails and must be dismissed.[5]

## II. Plaintiffs' facial challenge to O.C.G.A. § 16-11-34.1 in Count Two fails.

Count Two of the complaint raises a facial challenge to O.C.G.A. § 16-11-34.1, claiming it is overbroad in violation of the First Amendment.[6] (Doc. 1, ¶¶ 6, 96). Plaintiffs also appear to base their facial challenge on state law. (*See id.*, ¶ 96 (seeking to

---

[5] Any such claim fails for another reason – the complaint's allegations of malice are conclusory and insufficient to infer this necessary element of a malicious prosecution claim. First, to the extent the allegation of malice is premised on the arrests being made under a purportedly unconstitutional state statute (*see* Doc. 1, ¶ 90), qualified immunity would bar the claim, because § 16-11-34.1 has not been held to be unconstitutional. Second, the contention that Defendants knew that the House session had not actually been disrupted (*see id.*) does not support a finding of malice, because § 16-11-34.1 also precludes conduct "which may reasonably be expected to prevent or disrupt a session or meeting of the Senate or House of Representatives." Finally, the allegations that Defendants knew they lacked probable cause and arrested Plaintiffs solely "for the purpose of silencing" them (*id.*, ¶¶ 90, 91) are conclusory, and the factual allegations of the complaint do not provide a sufficient factual basis on which to infer either. *See Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009) (rejecting bare assertions of knowledge and intent as conclusory and not entitled to be assumed true).

[6] Count Two also raises a First Amendment as-applied challenge. Defendants do not move for dismissal of such claim at this stage of the proceedings.

bar enforcement of § 16-11-34.1 as unconstitutional under the Georgia Constitution)). Regardless, the facial challenge, which seeks invalidation of the state statute, fails. As discussed at length in Defendants' response in opposition to Plaintiffs' motion for preliminary injunction, which Defendants incorporate herein by reference, § 16-11-34.1 is a permissible content-neutral regulation of conduct which does not run afoul of the First Amendment. *See* Doc. 9 at 7-13. And, as also discussed in the Defendants' opposition as well as below, the complaint's allegations fail to show that the statute is unconstitutionally overbroad on its face. Moreover, to the extent the Plaintiffs' facial challenge is based on the Georgia Constitution, it is barred by the Eleventh Amendment. The overbreadth claim should be dismissed.

### A.   O.C.G.A. § 16-11-34.1 is not unconstitutionally overbroad.

"[A] facial challenge, as distinguished from an as-applied challenge, seeks to invalidate a state regulation itself." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1262 (11th Cir. 2007). "Only a law that is substantially overbroad may be invalidated on its face." *City of Houston v. Hill*, 482 U.S. 451, 458 (1987). In the First Amendment context, a statute is facially overbroad only when it "punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep.'" *Virginia v. Hicks*, 539 U.S. 113, 118-119 (2003) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). And where, as here, a statute aims to regulate conduct and not merely speech, its overbreadth must be not only be substantial, but real, before a court will invalidate the statute. *New York v. Ferber*, 458 U.S. 747, 769 (1982). *See also Williams*, 553 U.S. at 292 (cautioning courts to "vigorously enforce the

requirement that a statute's overbreadth be substantial, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep."). The "mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800 (1984). "[T]here must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be facially challenged on overbreadth grounds." *Id.* at 801.

Not surprisingly, then, a facial overbreadth challenge is the most difficult type of First Amendment challenge to sustain. Such challenges are "disfavored" because they "often rest on speculation," "raise the risk of premature interpretation of statutes on the basis of factually barebones records," "run contrary to the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process by . . . frustrat[ing] the intent of the elected representatives of the people." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450-51 (2008). "Because of the wide-reaching effects of striking down a statute on its face at the request of one whose own conduct may be punished despite the First Amendment," *Ferber*, 458 U.S. at 769, courts have long held that "[t]he overbreadth doctrine is 'strong medicine' that generally should be administered 'only as a last resort.'" *Locke v. Shore*, 634 F.3d 1185, 1191 (11th Cir. 2011) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). The party seeking facial invalidation of a state law thus bears a heavy burden of demonstrating, "'from the text of [the law] and from actual fact,'" that a "'substantial number of its applications are

10

unconstitutional" relative to the law's legitimate sweep. *Hicks*, 539 U.S. at 118-119, 122 (quoting *N.Y. State Club Ass'n v. City of New York*, 487 U.S. 1, 14 (1988)).

The complaint fails to meet this burden. It does not address the many legitimate applications of the statute. And while Plaintiffs allege, in conclusory fashion, that "the statute proscribes significant protected activity in violation of the First Amendment" (Doc. 1, ¶ 6), they do not adequately describe the purportedly unconstitutional applications, much less show "from the text of the law and from actual fact" that such applications are both real and substantial relative to the statute's legitimate sweep. *Hicks*, 539 U.S. at 122. Instead, Plaintiffs simply contend that § 16-11-34.1 is facially unconstitutional for the same reasons that a "virtually identical statute" was declared unconstitutional in *State v. Fielden*, 280 Ga. 444 (2006). This legal conclusion is without merit and is insufficient to sustain their facial challenge.

As an initial matter, whether O.C.G.A. § 16-11-34.1 or any of its subsections violate the First Amendment is, of course, a federal question. Thus, *Fielden*, 280 Ga. 444, while potentially persuasive, is not controlling on that issue. But *Fielden* is also not persuasive precedent when applied to § 16-11-34.1. To be sure, the statute at issue in *Fielden* contained language which overlaps in part with language contained in § 16-11-34.1(a).[7] But the similarity ends there. Indeed, the statute challenged in *Fielden* applied,

---

[7] In particular, it provided: "A person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt a lawful meeting, gathering, or procession is guilty of a misdemeanor." The statute challenged here, O.C.G.A. §16-11-34.1(a), provides: "It shall be unlawful for any person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt a session or meeting of

on its face, to conduct likely to disrupt "*any* lawful meeting, gathering, or procession" of people in *any* setting, under *any* circumstances, no matter "where or when the accused commit[ted] the proscribed act." *Fielden*, 280 Ga. at 445 (emphasis added). And, the *Fielden* court observed, such conduct amounted to a misdemeanor under the statute "regardless where it was committed, how trivial the act, its impact, or the intent of the actor other than the intent to commit the act itself." *Id*. at 447. Thus, while the statute reflected what the court found to be a legitimate interest in ensuring that some individuals' assertion of their rights of free expression do not imperil those of others, the court also determined that the statute had the perverse effect of prohibiting acts as far-reaching as "heckling a referee at a sports venue, leaving on the audible ringer of a cellphone during a business symposium, changing lanes into a funeral procession on a rainy day, even playing the stereo loudly in an apartment while a neighbor hosts a dinner party." *Id*. at 447. It is perhaps not surprising, then, that the *Fielden* court found, based on the particular statutory language before it, that "the literal language of the statute is so overbroad in its scope that it leads to an absurdity manifestly not intended by the legislature." *Id.* at 448 (internal quotation omitted).

The same is not true of § 16-11-34.1(a) – the only subsection of the statute specifically referenced in the complaint – which has a much narrower reach and serves an entirely different and far more significant state interest. On its face, and unlike the statute at issue in *Fielden*, § 16-11-34.1(a) does not extend to conduct disruptive of any

the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof."

gathering of any sort in any location, no matter how trivial or inconsequential; it is limited to conduct reasonably expected to prevent or disrupt sessions or meetings of members of the Georgia General Assembly. And it is also limited, necessarily, to conduct which occurs in and around the offices and chambers in which the legislature conducts its business. Section 16-11-34.1's reach and, accordingly, the extent to which it may deter any protected speech, are far narrower than the statute at issue in *Fielden*. *See Ferber*, 458 U.S. at 772 ("While a sweeping statute, or one incapable of limitation, has the potential to repeatedly chill the exercise of expressive activity by many individuals, the extent of deterrence of protected speech can be expected to decrease with the declining reach of the regulation."). And § 16-11-34.1, including subdivision (a) (which the complaint appears to target), is also much more closely tied to the underlying legislative objective and intent – i.e., ensuring the orderly, efficient, effective and dignified meetings of its legislative body – than the statute challenged in *Fielden* which, on its face, swept into its purview a significant amount of conduct the legislature did not intend even to regulate. *See* 280 Ga. at 448.

These distinctions render inapt the complaint's reliance on *Fielden* for the contention that the absence of a specific intent and actual disruption requirements render § 16-11-34.1 unconstitutionally overbroad. While the *Fielden* court may have found the absence of such requirements fatal to a statute that regulated conduct far beyond the intent of the legislature and as arguably trivial as heckling a referee or bothering attendees of a private dinner party, the complaint's allegations fail to plausibly show the court would have made such a finding here – or that any legal basis to do so exists.

13

Indeed, the complaint points to nothing in the First Amendment and to no federal case law that requires specific intent or actual disruption provisions to avoid substantial overbreadth in the challenged statute. It is perhaps not surprising, then, that the Georgia Supreme Court has not found § 16-11-34.1 to be unconstitutional in the nearly 15 years since *Fielden*, despite the overlapping language to which Plaintiffs point and despite the fact that § 16-11-34.1(a) has been enforced during this period.

Plaintiffs' allegations do not show that § 16-11-34.1 impacts a "substantial" amount of protected speech in relation to its numerous and plainly legitimate applications. There is no suggestion in the statutory language that, by implementing the challenged provisions of § 16-11-34.1, the General Assembly was seeking to regulate conduct other than that which is reasonably likely to prevent, interfere with, disrupt or impede official business inside the State Capitol. Nor does the complaint plausibly show that the statute chills a significant amount of protected speech beyond its clearly legitimate applications. And, of course, to the extent any application of the challenged provisions fails to comport with the First Amendment, it can be remedied through as-applied litigation. *See Broadrick*, 413 U.S. at 615-616. The complaint's allegations do not and cannot show that Plaintiffs are entitled to the "strong medicine" of facial invalidation of § 16-11-34.1 or any of its subsections. *Broadrick*, 413 U.S. at 613. *See also Parker v. Levy*, 417 U.S. 733, 760 (1974) ("This Court has … repeatedly expressed its reluctance to strike down a statute on its face where there were a substantial number of situations to which it might be validly applied. Thus, even if there are marginal applications in which a statute would infringe on First Amendment values, facial

14

invalidation is inappropriate if the 'remainder of the statute . . . covers a whole range of easily identifiable and constitutionally proscribable . . . conduct . . . .' *CSC v. Letter Carriers*, 413 U.S. 548, 580-581 (1973)"). Plaintiffs' First Amendment facial challenge to § 16-11-34.1, and their corresponding request for equitable and injunctive relief invalidating the statute, should be dismissed.

### B. The Eleventh Amendment and § 1983 bars Plaintiffs' facial challenge based on the Georgia Constitution.

The Eleventh Amendment bars suits against a state by its own citizens in federal court. *See* U.S. Const. amend. XI; *Hans v. Louisiana*, 134 U.S. 1 (1890). Thus, absent its consent, a state may not be sued in federal court unless Congress has clearly and unequivocally abrogated the state's Eleventh Amendment immunity. *See Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984). Congress may not, however, nullify a state's immunity with respect to alleged violations of state law. *DeKalb County School Dist. v. Schrenko*, 109 F.3d 680, 688 (1997). "For that reason, a federal court may not entertain a cause of action against a state for alleged violations of state law, even if that state claim is pendent to a federal claim which the district court could adjudicate." *Id.* (citing *Pennhurst*, 465 U.S. 99).

In addition to barring suits against a state itself, the Eleventh Amendment bars suits against state officials "when the state is the real, substantial party in interest." *See Pennhurst*, 465 U.S. at 101. The state is the real party in interest "if the effect of the judgment would be to restrain the Government from acting." *Id.* at 101 n.11. That is precisely what Plaintiffs' state-law facial challenge to § 16-11-34.1 seeks to do. Plaintiffs

seek "declaratory and injunctive relief barring enforcement" of the statute as "unconstitutional under … Georgia Constitution Article I, Section I, Paragraphs I, II, V, VII, IX, and XIII." (Doc. 1, ¶ 96). Thus, although Plaintiffs have nominally asserted their claim for equitable relief against individual state officers, the real party in interest with respect to such claim is the State of Georgia. *See Leeds v. Bd. of Dental Exam'rs*, 382 F. Supp. 3d 1214, 1228 (N.D. Ala. 2019) (real party in interest in suit against individual state officer defendants was State of Alabama, where plaintiffs sought "an injunction forbidding the enforcement of state law against [defendants] and a declaration that the [individual plaintiffs'] official conduct … is unlawful"). *See also Common Cause/GA v. Billups*, 406 F. Supp. 2d 1326, 1357-59 (N.D. Ga. 2005) (where the declaratory and injunctive relief sought by plaintiffs would restrain the State from attempting to enforce a requirement imposed by a state statute, the State of Georgia was the real party in interest). In sum, Plaintiffs' facial challenge to § 16-11-34.1 based on the Georgia Constitution is a cause of action against a state for alleged violations of state law and is, accordingly, barred by the Eleventh Amendment.[8] The claim must be dismissed.

---

[8] Although the Supreme Court recognized an exception to Eleventh Amendment immunity in *Ex parte Young*, 209 U.S. 123 (1908), it is inapplicable to Plaintiffs' claim based on the Georgia Constitution. Under the doctrine of *Ex parte Young*, the Eleventh Amendment does not bar suits seeking prospective relief against state officials to prevent ongoing violations of *federal* law. The exception is, however, "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 106. Thus, while official-capacity suits seeking prospective relief are permissible under *Ex parte Young* for ongoing violations of federal law, they are impermissible under the Eleventh Amendment for violations of state law. *Id.* at 103-106. This is true even of supplemental state-law claims against state officials brought alongside federal claims. *Id.* at 117-21.

Moreover, Plaintiffs' complaint is brought under 42 U.S.C. § 1983, which provides a cause of action for violation of *federal* law, and the only basis for jurisdiction pled is federal question jurisdiction (*see* Doc. 1, ¶ 7). Thus, even putting aside the sovereign immunity bar, any claim that § 16-11-34.1 violated the Georgia constitution is not a congnizable claim under § 1983. *See Sarver v. Jackson*, 344 F. App'x 526, 529 (11th Cir. 2009) (a claim based purely on state law cannot be brought under § 1983). And the Court is without any identified basis of jurisdiction to consider a claim based on state law. The claim should be dismissed for this additional reason.

## III. Plaintiff Williams' claim for "unlawful seizure due to legislator immunity" in Count Three is subject to dismissal.

As discussed, Plaintiffs assert a claim for "unlawful seizure" against the Defendants in Count One of the complaint. Count Three purports to assert a separate and additional claim on behalf of plaintiff Williams for "unlawful seizure due to legislator immunity." It is based on largely the same allegations as those which underlie Count One – namely, that Williams was purportedly "arrested and prosecuted without arguable probable cause" on November 13, 2018. The count adds, however, that Williams was a sitting state senator and "was immune from detention at the time of her arrest pursuant to Article III, Section IV, Paragraph IX of the Georgia Constitution"[9] – a circumstance she avers contributed to the absence of probable cause for her arrest and to the existence of

---

[9] This provision provides: "The members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. No member shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house." Ga. Const. Art. III, § IV, Para. IX

malice on the part of Defendants (who, according to Williams, arrested her despite knowing she was a state senator), and resulted in additional injury in the form of a lost opportunity "to conduct legislative business." It is unclear whether Count Three alleges that Williams' arrest was unlawful *by virtue of* her purported immunity or, instead, that the immunity contributed to the unlawfulness of her arrest. What is clear, however, is that Count Three fails to the extent it seeks to assert a claim for malicious prosecution against the Defendants and to the extent it asserts that Ga. Const. Art. III, § IV, Para. IX alone renders Williams' arrest a violation of the Fourth Amendment.

**A. Count 3 fails to state a malicious prosecution claim against Defendants**.

With respect to any malicious prosecution claim sought to be raised in Count Three, it suffers from the same fatal deficiency as Count One – namely, the absence of allegations plausibly showing that Williams was detained pursuant to legal process initiated or continued by the Defendants. While Williams claims a "warrant issued for [her] arrest," she fails to allege the involvement of any Defendant in obtaining the purported warrant, and any contention that defendant Powell "swore out" the warrant she references is insufficient, as discussed in connection with Count One, to demonstrate that he detained her pursuant to legal process. Indeed, Williams fails to link any Defendant, including defendant Powell, to the alleged "material omissions" which she contends, in conclusory fashion, were made in connection with the warrant. (*See* Doc. 1, ¶¶ 102-103). Likewise, for the reasons discussed in connection with Count One, Williams' conclusory contention that she "was detained after the initiation of legal process in the form of the

18

Uniform Traffic Citations, Summons, and Accusations" (*id.*, ¶ 107) amounts to a legal conclusion not entitled to the presumption of truth. The factual allegations of the complaint are, in short, insufficient to plausibly show that Williams was detained following the initiation of a criminal prosecution against her by the Defendants. Any malicious prosecution claim Williams seeks to raise in Count Three fails and must be dismissed.

### B. Count 3 fails to state a claim for false arrest claim based on Ga. Const. Art. III, § IV, Para. IX.

Nor does the immunity provided for under Ga. Const. Art. III, § IV, Para. IX alone render her arrest a violation of the Fourth Amendment or otherwise provide Williams with grounds for a false arrest claim separate and distinct from the claim alleged in Count One. Indeed, the allegations of the complaint fail to show that the immunity at issue even applies here.

On its face, Ga. Const. Art. III, § IV, Para. IX applies to arrests made during sessions or committee meetings of the General Assembly, or while in transit to or from the same. Plaintiff does not, however, allege she was attending or in transit to a legislative meeting or session, or that she was engaged in a legislative act or function, at the time of her arrest. She was instead, according to the complaint, involved in a protest. *Cf. Gravel v. United States*, 408 U.S. 606, 613-14 (1972) (addressing the parallel, and similarly worded, federal immunity provision found in Art. I, § 6, cl. 1, of the U.S.

Constitution and holding that "the Clause shields Members from arrest *while attending or traveling to and from* a session of their House") (emphasis added).[10]

Moreover, the immunity provision at issue is inapplicable to arrests for "treason, felony, or breach of the peace." *See* Ga. Const. Art. III, § IV, Para. IX. Williams was arrested for engaging in conduct likely to disrupt a legislative session as well as resisting arrest. Nothing in the complaint suggests that such conduct does not amount to a "breach of the peace" for purposes of the provision. And while Georgia courts do not appear to have interpreted the phrase "except for treason, felony, or breach of the peace" in the context of legislator immunity, other state and federal courts have. The Supreme Court, for example, has interpreted the identical phrase, which appears in the virtually identical immunity provision applicable to federal legislators, as encompassing *all* crimes and, accordingly, as precluding immunity for *any* criminal arrests. *See Gravel*, 408 U.S. at 613-14 (1972) (addressing the "except in cases of Treason, Felony and Breach of the Peace" language of Art. I, § 6, cl. 1, of the U.S. Constitution and observing that "[h]istory reveals, and prior cases so hold, that this part of the Clause exempts Members from arrest *in civil cases only*") (emphasis added); *Long v. Ansell*, 293 U.S. 76, 83 (1934) (addressing the "treason, felony, and breach of the peach" provision and explaining,

---

[10] Art. I, § 6, cl. 1, of the U.S. Constitution provides that "Senators and Representatives … shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same …." Notably, the Georgia Supreme Court has recognized that Ga. Const. Art. III, § IV, Para. IX "is similar to that in the Constitution of the United States in regard to Senators and Representatives in the Congress." *N. Atlanta v. Cook*, 219 Ga. 316, 318 (1963).

"[w]hen the Constitution was adopted, arrests in civil suits were still common in America. It is only to such arrests that the provision applies."); *Williamson v. United States*, 207 U.S. 425, 438 (1908) (reviewing the history of the phrase "treason, felony and breach of the peace" and holding that the phrase was intended to exclude "all crimes from the operation of the parliamentary privilege, and therefore to leave that privilege to apply only to prosecutions of a civil nature.").[11] Courts have reached the same conclusion in construing similar state constitutional provisions. *See, e.g., Roberts v. City of Forest Acres*, 902 F. Supp. 662, 666-69 (D.S.C. 1995) (construing South Carolina's equivalent provision and finding that "treason, felony or breach of the peace" encompasses all crimes); *People v. Flinn*, 47 Ill. App. 3d 357, 360-361 (1977) (holding that immunity provision in Illinois Constitution that exempts state legislators from arrest except in case of treason, felony, or breach of the peace, applies only to civil arrests and did not apply to legislator's arrest for speeding); *Ex parte Emmett*, 120 Cal. App. 349, 354-355 (Dist. Ct. App. 1932) (same). Because the complaint fails to adequately allege Williams' entitlement to immunity from arrest under Const. Art. III, § IV, Para. IX, any claim based on an alleged violation of the same by Defendants necessarily fails.[12]

---

[11] *See also Picray v. Sealock*, 138 F.3d 767, 771 (9th Cir. 1998) (noting that "the Supreme Court has read the 'breach of the peace' exception to federal legislators' immunity from arrest to encompass 'all criminal offenses,'" and holding that an Oregon provision providing that electors are immune from arrest when going to and from and while attending elections, except in the case of treason, felony, and breach of the peace, did not immunize elector from arrest for refusing officers' command to remove button before entering polling station and forcing his way past officers).

[12] In addition, as discussed above, the complaint is brought under 42 U.S.C. § 1983. But that statute provides a cause of action only for violations of federal law. Thus, to the

Regardless, as mentioned, Plaintiffs already assert a false arrest claim against the Defendants in Count One of the complaint. They provide no viable additional and separate federal claim that can be asserted on behalf of Senator Williams based solely on her claimed state law immunity from arrest. Count Three should be dismissed.

### C. Defendants are entitled to qualified immunity for any claim of unlawful seizure based on Const. Art. III, § IV, Para. IX.

Regardless, at a minimum, the law is sufficiently uncertain as to whether Ga. Const. Art. III, § IV, Para. IX applies to Williams' arrest so as to entitle Defendants to qualified immunity for any claim arising out of the same. Qualified immunity protects governmental defendants sued in their individual capacities so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002). The relevant question is the "objective (albeit fact specific) question," of whether a "reasonable officer" would have believed the defendant's action to be lawful in light of clearly established law and the information possessed by the defendant. *See, e.g., Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Once the public official shows that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred, the burden then shifts to the plaintiff to show that immunity is not appropriate. *See, e.g., Vinyard*, 311 F.3d at 1346. To carry that burden, the plaintiff must show that the constitutional right asserted was clearly established at the time the alleged violation occurred. *See, e.g., Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  Liability only

---

extent Plaintiffs seek to assert a freestanding cause of action for violation of a provision of the Georgia constitution, it cannot be asserted under § 1983.

attaches if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270 (1997).

The complaint makes clear that Defendants were performing their jobs as law enforcement officers at all relevant times. And, as shown, Plaintiffs cannot show that any purported right to be free from arrest under Const. Art. III, § IV, Para. IX in the circumstances described in the complaint was clearly established at the time of her arrest. Defendants are entitled to qualified immunity with respect to any such claim.

## IV.  Any claims for money damages against Defendants in their official capacities are subject to dismissal.

Plaintiffs sue Defendants in both their individual and official capacities. To the extent Plaintiffs are asserting claims for money damages against Defendants in their official capacities, those claims are barred by the Eleventh Amendment and are not cognizable under § 1983. Accordingly, they should be dismissed.

As discussed, the Eleventh Amendment bars actions against a State or one of its agencies, departments or officials, absent a waiver by the State or a valid congressional override, when the State is the real party in interest or when any monetary recovery would be paid from State funds. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Pennhurst*, 465 U.S. at 100-01. Congress did not intend for § 1983 to disturb the immunity to States provided by the Eleventh Amendment and alter the federal-state balance. *See, e.g., Will v. Mich. Dep't of State Police,* 491 U.S. 58, 65 (1989). Moreover, the State of Georgia – which includes Defendants in their official capacities – has not

23

consented to be sued under 42 U.S.C. § 1983. On the contrary, the Georgia Constitution provides that "[n]o waiver of sovereign immunity . . . shall be construed as a waiver of any immunity provided to the state or its departments, agencies, officers, or employees by the United States Constitution."  Ga. Const. Art. 1, § 2, ¶ 9(f). Because the State of Georgia has not waived the immunity provided to it, its agencies and its officials under the Eleventh Amendment, any claims for money damages against Defendants in their official capacities are barred.

Moreover, the specific language of § 1983 allows plaintiffs to sue only "person[s]" who violate their civil rights. *See* 42 U.S.C. § 1983. In interpreting this statute, courts have made clear that neither a state governmental entity nor a state governmental official acting in his official capacity is a "person" within the meaning of § 1983. *See, e.g., Will*, 491 U.S. at 71. The statutory language of 42 U.S.C. § 1983, in other words, "creates no remedy against a State." *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 (1997). Plaintiffs' § 1983 official-capacity claims against Defendants for money damages, if any, are not cognizable and must be dismissed.[13]

---

[13] Defendants advance this argument only with respect to any official-capacity claims for money damages. Under *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may obtain prospective equitable relief against state officials in their official capacities to end continuing violations of federal law. *See, e.g., Summit Med. Assocs, P.C. v. Pryor*, 180 F.3d 1326, 1336 (11th Cir. 1999).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that their motion to dismiss be granted.

Respectfully submitted,

|  |  |
|---|---|
| CHRISTOPHER M. CARR | 112505 |
| Attorney General | |
| | |
| KATHLEEN M. PACIOUS | 558555 |
| Deputy Attorney General | |
| | |
| ROGER A. CHALMERS | 118720 |
| Senior Assistant Attorney General | |

*/s/Deborah Nolan Gore*
DEBORAH NOLAN GORE          437340
Assistant Attorney General

PLEASE SERVE:
Deborah Nolan Gore
40 Capitol Square, S.W
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
Facsimile:  (404) 651-6920
dgore@law.ga.gov

25

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1, I hereby certify that the foregoing has been prepared

in compliance with Local Rule 5.1(B) in 14-point New Times Roman type face.

>*/s/ Deborah Nolan Gore*
>DEBORAH NOLAN GORE
>Georgia Bar No. 437340

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing **BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record in this case.

This 3rd day of December, 2020.

_/s/ Deborah Nolan Gore_____
DEBORAH NOLAN GORE

Georgia Department of Law
40 Capitol Square, S.W.
Atlanta, GA  30334-1300
Telephone: (404) 458-3289
Facsimile:  (404) 651-6920
dgore@law.ga.gov