# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GEORGIA SENATOR NIKEMA WILLIAMS,
et al.,

        Plaintiffs,

        v.

COLIN POWELL, et al.,

        Defendants.

CIVIL ACTION FILE NO.

1:20-CV-04012-MHC

## PLAINTIFFS' RESPONSE TO MOTION TO DISMISS

Plaintiffs file this Response Brief in opposition to Defendants' Motion to Dismiss, and initially note that while the Motion to Dismiss is not framed as a "partial" motion, Defendants fail to address and have <u>not contested</u> the viability of the following claims and issues:

(1) Individual damages claims under the First and Fourth Amendments to the United States Constitution;

(2) Unlawful seizure or arrest claims under the First and Fourth Amendments to the United States Constitution; and

(3) First and Fourteenth Amendment claims as applied regarding O.C.G.A.

§ 16-11-34.1;[1]

Plaintiffs will address each of the claims for which Defendants actually seek

dismissal below.

## ARGUMENT AND CITATIONS OF AUTHORITY

For the reasons stated below, the Motion to Dismiss should be denied.

## I.  PLAINTIFFS STATE A CLAIM FOR MALICIOUS PROSECUTION

While Defendants do not seek dismissal of Plaintiffs' unlawful seizure

claims to the extent they are premised on a false arrest theory, Defendants do

argue that Plaintiffs cannot maintain claims for malicious prosecution.

Defendants' sole argument on this point is that Plaintiffs cannot show a seizure

pursuant to legal process. [Doc. 11-1 at 5–8]. Defendants are mistaken.

"[T]he tort of malicious prosecution requires a seizure 'pursuant to legal

process.'" *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016) (quoting *Heck v.*

*Humphrey*, 512 U.S. 477, 484 (1994)).  The Eleventh Circuit has made clear that

such "[l]egal process includes an arrest warrant." *Id.*  As a result, "[a] police

officer who applies for an arrest warrant can be liable for malicious prosecution if

---

[1]     Defendants specifically "do not move for dismissal" of the as-applied
challenge. [Doc. 11-1 at 8 n. 6].

he should have known that his application failed to establish probable cause or if he made statements or omissions in his application that were material and perjurious or recklessly false." *Id.* (citations and internal quotation marks omitted).

In the Complaint, Plaintiffs alleged two independently sufficient ways by which Defendants initiated legal process. First, Defendants caused warrants to be issued. *See* Compl. ¶ 78 (alleging that Defendant Powell swore out the warrants for each Plaintiff); *id.* ¶ 87 (alleging that warrants were facially void in violation of *Malley v. Briggs*, 475 U.S. 335 (1986)); *id.* ¶ 88 (alleging that warrants contained knowing or reckless material omissions including that Plaintiffs had not disrupted the legislature, in violation of *Franks v. Delaware*, 438 U.S. 154 (1978)).

Defendants contend that although Plaintiffs pled that there were "warrants issued for Plaintiffs," Compl. ¶ 87, Plaintiffs failed to allege that Defendants presented the warrants to a judge who then signed them. [Doc. 11-1 at 7]. Defendants push this argument despite acknowledging that, by definition, a warrant requires a judicial officer's sign off before it can be issued. [Doc. 11-1 at 7 n.4]. Defendants' contention elevates hyper-technical form over substance. In any event, Plaintiffs could identify the obviousness of a judge's sign off by

Amendment if necessary.[2]  But at the motion to dismiss stage, Plaintiffs are

entitled to all reasonable inferences. *Stephens v. Dep't of Health & Human Servs.*,

901 F.2d 1571, 1573 (11th Cir. 1990).  It is reasonable to infer that if Defendants

caused a warrant to issue, the issuance required a judge's signature before the

warrant came to be.

Also as to the warrant, Defendants briefly argue that only Defendant

Powell signed the warrant affidavits so only he can be held responsible for any

claim of malicious prosecution. [Doc. 11-1 at 7]. The Eleventh Circuit's recent

decision in *Williams v. Aguirre*, 965 F.3d 1147 (11th Cir. 2020), makes clear that it

is not only the warrant's affiant who can be held responsible for malicious

prosecution.  *See id*. at 1165 (stating that liability is appropriate where "an official,

including an individual who did not apply for the warrant, intentionally or

recklessly made misstatements or omissions necessary to support the warrant."

(emphasis added)).  In *Williams*, the Court found that two officers who did not

apply for a warrant could be held liable to the extent they supplied false

information to the officer who swore out the warrant.  As applied to this case,

Plaintiffs alleged that each Defendant personally caused one or more Plaintiffs to

---

[2] To the extent the Court would like a statement confirming a judge's signature
on the applicable warrants, Plaintiffs move for leave to amend their Complaint.

be seized. [Compl. at ¶ 50 & n.2] A reasonable inference is that these officers

conveyed the relevant information to Powell before he swore out a warrant to

justify each Plaintiff's detention. An alternative reasonable inference is that each

Defendant knew Powell would swear out a warrant based on their false arrest,

which also gives rise to liability. *See Wilkerson v. Seymour*, 736 F.3d 974, 979 (11th

Cir. 2013) (an officer must have "the requisite information to put him on notice

that an unlawful arrest was occurring or had occurred" (citing *Jones v. Cannon*,

174 F.3d 1271, 1283-84 (11th Cir. 1999))).

As a second theory, Plaintiffs pleaded that legal process began when

Defendants issued each of them a Uniform Traffic Citation, Summons and

Accusation while Plaintiffs were in custody. [Compl. ¶¶ 75–77.] Under Georgia

law, the issuance of a citation is the start of legal process without the need for

any further action by judge or prosecutor. The citation itself is a criminal

accusation.

O.C.G.A. § 16-1-3 defines a "Prosecution" to "mean[] all legal proceedings

by which a person's liability for a crime is determined, commencing with the

return of the indictment **or the filing of the accusation**, and including the final

disposition of the case upon appeal." (emphasis added). O.C.G.A. § 40-13-1

further provides that a citation "shall serve as the citation, summons, accusation,

or other instrument of prosecution of the offense or offenses for which the accused is charged."  This conclusion is confirmed by the case law, which also holds that a prosecution begins "under a valid warrant, accusation, or summons." *Renton v. Watson*, 319 Ga. App. 896, 898, 739 S.E.2d 19, 23 (2013).  Further, since each Plaintiff was only charged with a misdemeanor, O.C.G.A. § 17–7–71 confirms that all misdemeanors can be tried by accusation without need for an indictment.

Defendants cited to *Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004) for the proposition that "[i]n the case of a warrantless arrest, the judicial proceeding does not begin until the party is arraigned or indicted." [Doc. 11-1 at 5].  This citation is misplaced for at least two reasons.  First, this is not a case about a warrantless arrest because each of the Plaintiffs were detained after the issuance of a warrant.  Second, although a judicial *proceeding* may not start until arraignment or indictment under Florida, which the Court was addressing in *Kingsland*, under Georgia law there can be no doubt that an accusation starts a *prosecution*.

Additionally, cases that have considered this issue have held that a plaintiff can recover for malicious prosecution where there is a warrant issued after an arrest, so long as the warrant was issued while the plaintiff was in

custody. *See Jones v. Barrett*, No. 3:17-CV-13 (CDL), 2018 WL 1384646, at *9 (M.D. Ga. Mar. 19, 2018) ("[A]lthough Plaintiff was initially arrested without a warrant, she presented evidence that she remained incarcerated after Palmer obtained the arrest warrant at Barrett's direction. Therefore, the Court finds that Plaintiff has presented sufficient evidence of a seizure in relation to the prosecution and pursuant to legal process."); *Johnson v. Dekalb Cty.* No. 1:17-cv-2601-TWT, 2019 WL 2409659, at *13 (N.D. Ga. June 7, 2019) (allowing malicious prosecution claim to proceed when warrants procured while plaintiffs were in custody). Here, Plaintiffs repeatedly allege that the warrants and citations were issued while Plaintiffs were in custody and that Plaintiffs were detained after the warrants were issued. [*See* Compl. ¶¶ 75, 78, 92.] As a result, Plaintiffs have presented sufficient facts to show a seizure pursuant to process, and thus Plaintiffs must survive a motion to dismiss.

## II.     O.C.G.A. § 16-11-34.1 IS FACIALLY UNCONSTITUTIONAL.

Defendants' argument in their Motion to Dismiss tracks their argument in opposition to a preliminary injunction.  First, they argue that O.C.G.A. § 16-11-34.1 is a permissible content neutral regulation that is not overbroad because O.C.G.A. § 16-11-34.1 is sufficiently different from O.C.G.A. § 16-11-34.  Second, they argue that any claim for injunctive relief as to the Georgia Constitution is

barred by the Eleventh Amendment.  This latter argument will be addressed in the next section.

Plaintiffs recognize, as Defendants point out at length, that facial overbreadth challenges are disfavored.  Here, however, both statutes are identical as to their language—problems which drive the overbreadth analysis. The substantive portion of O.C.G.A. § 16-11-34 ("Disturbance of meeting, gathering or procession") reads:

> (a) A **person who recklessly or knowingly commits any act which may reasonably be expected to prevent or disrupt** a lawful meeting, gathering, or procession is guilty of a misdemeanor.

(Emphasis added).

Challenged here, O.C.G.A. § 16-11-34.1(a) reads:

> (a) It shall be unlawful for any **person recklessly or knowingly to commit any act which may reasonably be expected to prevent or disrupt** a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof.

(Emphasis added).

The only difference between the two provisions is the types of meetings covered.

Utilizing the overbreadth doctrine, the Supreme Court of Georgia declared O.C.G.A. § 16-11-34 "unconstitutional and void" in *State v. Fielden*, 280 Ga. 444

(2006). Specifically, the Court concluded that the statute was overbroad because the statute did not require (1) knowledge or intent that the act disrupt the meeting, or (2) any actual or imminent disruption. The Court explained that the statute could only pass muster if it were *legislatively* narrowed so as to only criminalize "those activities *intended* to prevent or disrupt a lawful meeting *and* which either *cause the untimely termination* of the lawful meeting or *substantially impair the conduct* of the lawful meeting." *Id.* (emphasis added).[3] The Georgia Supreme Court reasoned:

> O.C.G.A. § 16-11-34 does not require proof of a person's intent to disrupt or prevent a lawful meeting as an element of the offense. Nor does it require that the committed act substantially impair the ordinary conduct of the meeting. Under the literal language of the statute, the only proof required is that the person recklessly or knowingly committed any act that may reasonably be expected to prevent or disrupt a lawful meeting, gathering or procession. It does not matter under the statute where or when the accused commits the proscribed act; **it does not even matter whether the act, upon its commission, results in any actual prevention or disruption**. Any recklessly or knowingly committed act that could reasonably be expected to prevent or disrupt a lawful meeting, gathering or procession is a misdemeanor, **regardless where it is committed, how**

---

[3]    *Lewis v. City of New Orleans*, 415 U.S. 130 (1974) (ordinance making it unlawful to "curse or revile or to use obscene or opprobrious language" toward police unconstitutionally overbroad); *District of Columbia v. Guery*, 376 A.2d 834, 838-39 (D.C. App. 1977) (finding that an order barring disruption at meetings could only stand if narrowly interpreted to require that the "loud, threatening, or abusive language be *disruptive or nearly so*," and to require that the actions were commenced with the "specific *intent* of causing disruption.").

**trivial the act, its impact, or the intent of the actor other than the intent to commit the act itself**. O.C.G.A. § 16-11-34 thus applies to the reckless or knowing commission of such acts as heckling a referee at a sports venue, leaving on the audible ringer of a cellphone during a business symposium, changing lanes into a funeral procession on a rainy day, even playing the stereo loudly in an apartment while a neighbor hosts a dinner party. These examples demonstrate that **the literal language of O.C.G.A. § 16-11-34 reaches conduct that is at once innocent and protected by the guarantees of free speech, thereby affecting and chilling constitutionally protected activity**.

 We recognize that where conduct and not merely speech is involved, "the overbreadth of a statute must not only be real but substantial as well, judged in relation to the statute's plainly legitimate sweep." Based on our analysis of the statutory language in O.C.G.A. § 16-11-34, **we conclude that it significantly impacts constitutionally permitted conduct without the requisite narrow specificity and fails to balance in a reasonable way the First Amendment rights of those desiring to express opposing points of view**. Accordingly, we find its overbreadth is both real and substantial.

280 Ga. at 447 (citations omitted) (emphasis added).

The two maladies of O.C.G.A. § 16-11-34 also dog the identical language of O.C.G.A. § 16-11-34.1(a).  First, the Disruption of General Assembly statute is identically mute as to <u>intent to prevent or disrupt</u> the General Assembly meetings.  Second, that statute likewise identically fails to limit its scope to "those activities intended to prevent or disrupt a lawful meeting and <u>which either cause the untimely termination of the lawful meeting or substantially impair the conduct of the lawful meeting</u>."  280 Ga. at 447 (emphasis added).

Indeed, Plaintiffs allege and can show that the meetings here proceeded without disruption. [Doc. 1 ¶ 54].

Further, Defendants argue that the locations governed by the two statues vary. They are correct that some of the examples identified in the *Fielden* decision are not criminalized under O.C.G.A. § 16-11-34.1 given the types of meetings covered.[4] But O.C.G.A. § 16-11-34.1 criminalizes conduct in the seat of Georgia state government, including "a session or meeting of the Senate or House of Representatives, a joint session thereof, or any meeting of any standing or interim committee, commission, or caucus of members thereof." As pointed out previously, the location impacted here is the Georgia State Capitol, the epicenter of two of the three branches of Georgia Government and a centerpiece of free speech:

> As a matter of course, Georgia grants private speakers equal and unimpeded access to the Rotunda, a designated public forum. Its citizens may come and go, speak and listen, applaud and condemn, and preach and blaspheme as they please. Georgia neither approves nor disapproves such conduct, **no matter how sordid or controversial it might be**. Instead, the state remains aloof; it is neutral toward, and uninvolved in, the private speech.

---

[4] Defendants mention content neutral regulation of conduct as part of their analysis, which may be a reference to the locations covered, however content neutrality does not save an unconstitutionally overbroad statute. Defendants have not suggested otherwise, nor can they.

*Chabad-Lubavitch of Georgia v. Miller*, 5 F.3d. 1383, 1388 (11th Cir. 1993) (en banc) (emphasis added).

Moreover, as to the examples identified in *Fielden*: (1) the "heckling a referee at a sports venue" here becomes critical comments on legislation or about legislators; (2) the "leaving on the audible ringer of a cellphone during a business symposium" now becomes the same conduct in a committee meeting, and (3) the "playing the stereo loudly in an apartment while a neighbor hosts a dinner party" becomes (very specifically here) the completely peaceful and spirited protests about voter suppression in the Georgia Capitol Rotunda that led to Plaintiffs' arrests. *See* 280 Ga. at 447.

Historically, citizens have gathered to voice their concerns as to bills before the Georgia General Assembly. They have voiced their concerns (1) outside the Georgia State Capitol and legislative buildings, (2) inside the Georgia State Capitol and legislative buildings but not withing meeting rooms, and (3) inside committee meeting rooms and other meetings. Because of the maladies of the statute, each time they express themselves they are subject to possible arrest even though either (1) they did not <u>intend to prevent or disrupt</u> a meeting, or (2) their expression did not "<u>either cause the untimely termination of the lawful meeting or substantially impair the conduct of the lawful meeting</u>." 280 Ga. at

448 (emphasis added). The overbreadth is substantial and real because all expression in and around the Georgia General Assembly and nearby outlying areas is subject to arrest if law enforcement determines that O.C.G.A. § 16-11-34.1's terms are violated even though its terms lack the constitutionally prescribed dual limitations on its permissible reach as set out in *State v. Fielden*.

The Georgia Supreme Court's decision, interpreting and invalidating its own similar state statute, is entitled to great deference. The Eleventh Circuit summarized this caselaw in *Cotton States Mutual Insurance Company v. Johnson*, 749 F.2d 663, 667 (11th Cir. 1984)*:*

> It is well-settled that "[s]tate courts have the right to construe their own statutes," *Bank of Heflin v. Miles*, 621 F.2d 108, 113 (5th Cir. 1980), and federal courts are bound by that state interpretation. *Id.* at 114. *See also Sanchez v. United States*, 696 F.2d 213, 216 (2d Cir. 1982) ("To comply with the principle of comity which undergirds our federal system, we are obliged to give full effect to decisions of New York's highest court on issues involving the application of New York law."). When ruling upon the constitutionality of a state statute, a federal court "may only consider the statute's plain meaning and authoritative state court constructions of the statute."

*Florida Businessmen v. State of Florida*, 499 F. Supp. 346, 352 (N.D. Fla. 1980).

The ultimate conclusion of *Fielden* did not turn on the type of meetings covered. Rather, the Georgia Supreme Court focused on the identical common language between O.C.G.A. § 16-11-34 and the statute at issue here, specifically,

the failure to limit scope to "those activities intended to prevent or disrupt a lawful meeting and which either cause the untimely termination of the lawful meeting or substantially impair the conduct of the lawful meeting." 280 Ga. at 448.[5]

Like O.C.G.A. § 16-11-34, the Disrupting-the-General-Assembly provision, O.C.G.A. § 16-11-34.1(a), (f) and (g), are facially overbroad and should be enjoined and the effort to dismiss these claims should fail.[6]

## III. THE ELEVENTH AMENDMENT DOES NOT BAR FEDERAL CONSTITUTIONAL CLAIMS IN A FACIAL CHALLENGE OR INJUNCTIVE RELIEF UNDER STATE LAW AGAINST INDIVIDUAL OFFICERS.

Defendants argue that Plaintiffs cannot maintain a facial challenge to O.C.G.A. § 16-11-34.1 under the Georgia Constitution in federal court. In support of that argument, Defendants cite *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 99 (1984), which held that a federal court could not order

---

[5]    While Defendants argue that O.C.G.A. § 16-11-34.1(a) has not been struck down by the Georgia Supreme Court "in the nearly 15 years since *Fielden*," [Doc. 9 at 18], they fail to show that such a challenge has ever been made or entertained by that court or any other.

[6]    Plaintiffs have previously addressed the constitutionality of O.C.G.A. § 16-11-34.1(f) and (g), which are likewise overbroad and exacerbate the unconstitutional scope. [Doc. 10 at 8-13].

injunctive relief under state law against state officials in order to reform a mental health facility.  Defendants' argument is premised on the notion that *any* injunctive relief against *any* individual state actor is tantamount to an injunction against the state itself, which is impermissible under the Eleventh Amendment. Yet, Defendants have not challenged Plaintiffs' ability to mount a facial challenge premised on federal law.

Plaintiffs assert, however, that *Pennhurst* is not applicable to these facts, such that any alteration to the individual Defendants' conduct would not force the state itself into action.  *Pennhurst* involved a class action seeking to reform the day-to-day administration of the Pennsylvania mental health institution for the intellectually disabled. Any injunctive relief premised on state law in *Pennhurst* would force the state to fundamentally change how it ran this institution.  Here, Plaintiffs have alleged claims related to an idiosyncratic series of arrests on a single day.  There are no allegations of systemic wrongs, and there is no cause for system-wide injunctive relief.  Plaintiffs have merely alleged an entitlement to relief sufficient to ensure that these particular named officers not arrest these Plaintiffs again, so that these Plaintiffs can return to the Capitol to exercise their rights—under both the state and federal constitutions. *Pennhurst* should not be expanded to reach these disparate facts. Plaintiffs also note that Defendants'

argument is practically very limited. If accepted, their argument only touches

prospective relief premised exclusively under the Georgia Constitution.[7]


## IV.     QUALIFIED INMMUNITY IS NO BAR TO WILLIAMS SEIZURE CLAIM BASED ON GEORGIA CONSTITUTION ART. III, § *IV PAR. IX*.

Article III, § IV, Par. IX of the Georgia Constitution provides that:

The members of both houses shall be free from arrest during sessions of the General Assembly, or committee meetings thereof, and in going thereto or returning therefrom, except for treason, felony, or breach of the peace. No member shall be liable to answer in any other place for anything spoken in either house or in any committee meeting of either house.

On November 13, 2018, Sen. Williams travelled to the Capitol for a

specially called legislative session.[8]  The Georgia Senate conducted its session

beginning at 10:00 a.m., while the Georgia House of Representatives conducted

its session at 1:00 p.m.  Sen. Williams was arrested after the Georgia Senate

---

[7]     Plaintiffs also note that the interpretation of the Eleventh Amendment in *Hans v. Louisiana*, 134 U.S. 1 (1890) is wildly atextual.  The Eleventh Amendment does not proscribe federal court actions against states by citizens of the same state.  *Hans* should not be further stretched to prohibit federal litigation involving individual citizens of the same state.

[8]     Sen. Williams is now United States Congresswoman Williams, but to avoid confusion, Plaintiffs refer to Sen. Williams's title at the time of the facts at issue.

session had ended and while the Georgia House Session was being conducted. After Sen. Williams completed the floor session of the Georgia Senate, she left the third floor of the Georgia State Capitol where the Senate Chamber is located. While on the second floor, she was arrested.[9] [Doc. 1 ¶¶ 72-74, 99-107].

Article III, § IV, Par. IX of the Georgia Constitution does not stipulate that a Senator must leave a legislative session as fast as possible or directly. In fact, necessary business is conducted traversing to and from session through conversations with other legislators, lobbyists, and constituents. It cannot be disputed that Sen. Williams was generally travelling from the Senate Chamber to the exit when she was arrested.[10]

Defendants then contend that Ga. Const. Art. III, § IV, Par. IX does not apply to criminal matters, only civil. First, Defendants admit that this constitutional provision has never been interpreted by a Georgia court. Thus, a Georgia court would need to make any initial determination about Georgia law and the Georgia Constitution. *Gonzalez v. Governor of the State of Georgia*, 969 F.3d

---

[9] Though it is possible to take an elevator from the third floor of the Georgia Capitol to the first floor to exit, the most common route is a marble staircase from the third floor to the second, and then out the doors to exit.

[10] To the extent the Court would like more specificity in the Complaint regarding Senator Williams's movements at the Capitol, Plaintiffs move for leave to amend their Complaint.

1211 (11th Cir. 2020); *see also Forgione v. Dennis Pirtle Agency, Inc.*, 93 F.3d 758, 761 (11th Cir. 1996) ("When substantial doubt exists about the answer to a material state law question upon which the case turns, a federal court should certify that question to the state supreme court in order to avoid making unnecessary state law guesses and to offer the state court the opportunity to explicate state law.").

Though Defendants cite *Gravel v. U.S.*, 408 U.S. 606 (1972), which obviously addressed only the United States Constitution, not the Georgia Constitution, the Court in *Gravel* continued to state that "[t]he Speech or Debate Clause was designed to assure a co-equal branch of the government wide freedom of speech, debate, and deliberation without intimidation or threats from the Executive Branch." 408 U.S. at 616. Here, the actions of Defendants prior to and during the arrest disrupted and ultimately precluded Senator Williams from engaging in her legislative duties. The Georgia Supreme Court may very well, and likely should, protect Georgia legislators from arrest on the way to or from their duties when there are ample other occasions to hold legislators to account for any conduct that might be criminal.

Defendants also claim that the officers that impermissibly arrested Sen. Williams should be granted qualified immunity because Article III, § IV, Par. IX

of the Georgia Constitution is sufficiently uncertain.[11]  Defendants have not even argued at this stage in the proceeding that qualified immunity bars individual damages claims generally, so the this Court need not even reach this issue.  The Defendants argument that Senator Williams' cannot succeed on individual damage claims because her legislative immunity is unclear addresses a claim for relief not contested by Defendants here.

Moreover, evidence will show that the law is sufficiently clear to pierce qualified immunity. A sitting Georgia legislator has not been arrested in recent memory because this is undoubtedly part of the training for every member of the Georgia State Patrol and/or Capitol Police that regularly police the Georgia Capitol. In fact, and in defense of their actions, Defendants claimed that they did not know Sen. Williams was a legislator, presumably because it is widely known that legislators are not subject to arrest going to or from session or committee meetings. Regardless of this contradictory argument, the evidence that will show that multiple other legislators and members of the press alerted the arresting officers that they were in fact arresting a sitting Georgia State Senator.

---

[11] Defendants also claim that the additional claim by Sen. Williams fails to state a claim for malicious prosecution, which Defendants admit addresses the same facts and law as Count I, which Plaintiffs have addressed in Section I., *supra*.

Certainly at the motion-to-dismiss stage, where Plaintiffs are to be given the benefit of the doubt, Defendants have not met their burden, and Plaintiffs should be permitted to collect discovery related to the claims to prove them.

## V.  PLAINTIFFS DO NOT RAISE OFFICIAL CAPACITY DAMAGE CLAIMS

As to Defendants' argument that damages claims in official capacity are barred by the Eleventh Amendment, [Doc. 11-1 at 23-24], Plaintiffs state that they do not raise such damages claims and official capacity claims are only as to equitable relief.

## CONCLUSION

For these reasons, Plaintiffs request that this Court deny Defendants' Motion to Dismiss.[4]

Respectfully submitted, this 18th day of January, 2021.

Counsel for Plaintiffs Williams and Barrington-Ward:

*/s/David N. Dreyer*
David N. Dreyer
Georgia Bar No. 141322
*/s/Michael T. Sterling*
Michael T. Sterling
Georgia Bar No. 745667
DREYER STERLING LLC
437 Memorial Drive, Suite A2
Atlanta, Georgia 30312

---

[4]  Plaintiffs' counsel certifies that this brief is in Book Antiqua, 13 point.

(404) 234-4447
david@dreyersterling.com
michael@dreyersterling.com

Counsel for Plaintiffs Bathrick, Gaggero, Harris, Hooks, Smith, Tucker, Velez,

and Zachary:

*/s/ Gerald Weber*
Gerald Weber
Georgia Bar No. 744878
LAW OFFICES OF GERRY WEBER, LLC
Post Office Box 5391
Atlanta, GA 31107
(404) 522-0507
wgerryweber@gmail.com

*/s/ Ebony Brown*
Ebony Brown
Georgia Bar No. 412565
SOUTHERN CENTER FOR HUMAN
RIGHTS
60 Walton Street, N.W.
Atlanta, GA 30303
(404) 688-1202
ebrown@schr.org

*/s/ Zack Greenamyre*
Zack Greenamyre
Georgia Bar No. 293002
MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
(404) 812-4751
zack@mitchellshapiro.com

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I electronically filed the forgoing **PLAINTIFFS'**

**RESPONSE TO MOTION TO DISMISS** with the Clerk of Court using the

CM/ECF system, which will automatically send email notification of such filing

to all attorneys of record in this case.

DATED: This the 18th day of January, 2021.

*/s/David N. Dreyer*
David N. Dreyer
Georgia Bar No. 141322
DREYER STERLING LLC
437 Memorial Drive, Suite A2
Atlanta, Georgia 30312
(404) 234-4447
david@dreyersterling.com